**UNITED STATES of America, Plaintiff,**

v.

**HOUGLAND BARGE LINE, INC., Defendant.**

**Crim. No. 74–147.**

United States District Court, W. D. Pennsylvania.

Dec. 20, 1974.

Craig R. McKay, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Jerome W. Kiger, Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

This matter is here before me on motion of the defendant, Hougland Barge Line, Inc. to dismiss the information filed against it by the United States of America under the Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1321(b)(5). The Government in its complaint and information charged the defendant, a Kentucky Corporation, as the person in charge of its vessel, while having knowledge of a discharge of oil from its vessel, with failure to notify the United States Coast Guard of the discharge in violation of § 1321(b)(5).

The question before me calls for the interpretation of the term "person in charge" in the statute and its application to the defendant. The pertinent portion of the statute reads as follows:

"(5) Any *person in charge* of a vessel or of an onshore facility or an offshore facility shall, as soon as he has knowledge of any discharge of oil or a hazardous substance from such vessel or facility in violation of paragraph (3) of this subsection, immediately notify the appropriate agency of the United States Government of such discharge. Any such person who fails to notify immediately such agency of such discharge shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both." (Emphasis added).

The defendant argues that a corporation is not includable in the term "person in charge" as such term is used in the pertinent section of the Act because first,

1. In the first sentence of the section, the word "he" is used rather than the word "it".

2. That the second sentence authorizes imprisonment of the "person in charge" and a corporate body cannot be imprisoned.

3. The last sentence authorizes immunity to the person in charge, except in cases of perjury or giving a false statement and such acts are acts of individuals rather than corporations.

4. That only an individual can be present at the time of a discharge of oil, whereas a corporation cannot be present.

5. "Since the courts disagree as to the interpretation of 'person in charge' the Act is vague and ambiguous and therefore unconstitutional."

Congress, prior to enacting the Water Pollution Control Act Amendments of 1972, set forth in Senate Report P.L. 92–500 a long history of pollution and the efforts to enlist the aid of the states in supporting measures for controlling the pollution of interstate waters having an adverse effect upon public health and welfare. After much detailed discussion it made its findings and recommended legislation in order to carry out certain objectives for standardizing federal and state controls.

In re-affirming the objective contemplated by the Rivers and Harbors Act of 1899, Congress continued, "without a clearly set goal of natural water quality achieved through application of a no-discharge policy, it is not likely that resources will be applied to develop the means necessary to achieve an environmentally and ecologically sound water quality goal." United States Code Cong. & Admin. News (1972) at page 3678. "The objective of the Act is to restore and maintain the natural chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

In its legislative proviso, it stated, "The Congress hereby declares that it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone." 33 U.S.C. § 1321(b)(1).

It thereafter provided definitions for various terms relating to "oil and hazardous substances liability" under subsection (a) of § 1321. In these definitions it included the word "person" as

follows, " 'person' includes an individual, firm, corporation, association, and a partnership". § 1321(a)(7). Following this definition under § 1321(b)(3) it provided for the specific provision with which we are here concerned:

> "The discharge of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone in harmful quantities as determined by the President · under paragraph (4) of this subsection, is prohibited . . .",

with certain exceptions not pertinent here.

Under § 1321(b)(5) it then provided that any *person in charge of a vessel* "shall, as soon as he has knowledge of any discharge of oil or a hazardous substance from such vessel or facility in violation of paragraph (3) of this subsection, immediately notify the appropriate agency of the United States Government of such discharge." Under § 1321(b)(6) Congress provided for civil penalties against the owner or operator of any such vessel.

The defendant here attempts to make an exclusory distinction between the term "person in charge" which is not defined in the act and the word "person" which is defined in the act. In examining the statute, we observe that the pertinent portion of § 1321(b)(5) does not emphasize the grouping of the words "person in charge" as having special significance as a single term.

However, the statute does specifically set out the word "person" in the definitions under § 1321(a)(7) as having a significant meaning to include "an individual, firm, corporation, association and a partnership". Thus, Congress made no differentiation for the word "person" as used elsewhere in the statute other than as it was defined in § 1321(a)(7). Had Congress intended that "person in charge" was to have a special or different meaning it would have defined that term as it did other combinations such as in § 1321(a)(4), "public vessel"; (6)

"operator or owner"; (9) "contiguous zone"; (10) "onshore facility"; (11) "offshore facility"; and (14) "hazardous substance".

■ Accordingly, by omitting the combination which the defendant contends has a special significance as a phrase connoting an individual rather than a group, Congress specified the meaning of the word "person" as including not only individuals, but also firms, corporations, associations and partnerships.

■■ The courts are not authorized to project a meaning into a statute which is significantly covered by words and definitions of Congress, itself. Thus, the defendant's argument (Defendant's brief, page 2) that the word "he" rather than "it", as used in the first sentence of the pertinent section, does not give the word "person" an exclusory meaning. Furthermore, it does not take away from the common knowledge and principles of law relating thereto that corporations may act only through persons. Schoenbaum v. Firstbrook, 405 F.2d 200, C.A. 2, 1968, cert. den. 395, 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); In re Gold, 93 F.2d 676, C. A. 3, 1937; Pennsylvania Co. For Insurances on Lives and Granting Annuities to Use of Royal Indemnity Co. v. Federal Reserve Bank of Philadelphia, 30 F. Supp. 982 (D.C.Pa.1939).

Even if the statute had not defined "person" as including corporations, there is every likelihood that such an interpretation would be made by the courts where the sense and purpose of the statute plainly indicates it. In forbidding monopolies and price fixing, Congress stated in 15 U.S.C. § 1 that "Every person who shall make any contract or engage in any combination or conspiracy declared by sections 1 to 7 of this title to be illegal shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the dis-

cretion of the court." This was held time and again to include corporations.

In United States v. Hilton Hotel Corporation, 467 F.2d 1000, C.A. 9, 1972, cert. den. 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256 (1973), it was held that under sections 1–7 of this Title a corporation is liable for the acts of its agents within the scope of their authority, even when done against company orders. In United States v. American Radiator & Standard Sanitary Corp., 433 F.2d 174, C.A. 3, 1970, cert. den. 401 U.S. 948, 91 S.Ct. 928, 28 L.Ed.2d 231 (1971), it was held that corporations, equally with persons, could be held guilty of conspiracy in violation of this Act. Therefore, the fact that the second sentence authorized imprisonment of "persons in charge" does not help the defendant to re-translate the word "person" as defined in the statute so as to exclude corporate bodies.

■ The defendant also argues (Defendant's brief, page 3) that as a corporation it cannot be imprisoned, and therefore, this would indicate that it was not intended to apply to corporations. Innumerable federal penal statutes prohibit certain activities, including business entities, and provide penalties for violation of such prohibited acts. Both individuals and corporations are penalized even though a corporation may not be imprisoned. Thus, as illustrated by antitrust cases and Internal Revenue cases, where a statute calls for imprisonment, when imposed against a defendant corporation, only the fine portion of the penalty may be imposed. United States v. Hilton Hotel Corporation, *supra*; United States v. Swift & Company, 189 F.Supp. 885 (D.C.Ill., 1960), affirmed 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249 (1961).

■ As for the defendant's argument (Defendant's brief, page 3) that the last sentence of § 1321(b)(5) authorizes immunity for the "person in charge" except in cases of perjury or giving a false statement" (Defendant's brief, page 3) are acts of individuals rather than cor-

porations, no support is given here to this argument; for it is well known that corporations act through their officers and as such corporations may be guilty of the acts of the individual officers, where such violations have been perpetrated in the corporate processes.

So that where the statute provides protection for a defendant, the protection will be applied on the same basis as imprisonment and fine is translated when applied to a corporation. 26 U.S.C. § 7201 provides:

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, . . . ."

■ In United States v. Knox Coal Company, 347 F.2d 33, C.A. 3, 1965, the indictment and conviction of a company was upheld for willfully attempting to evade and defeat a large part of taxes due and owing the United States of America. See also, United States v. George F. Fish, Inc., 154 F.2d 798, C.A. 2, 1946. The term "person" in a statute relating to an offense against the United States or to defraud the United States or any agency thereof includes corporations. 1 U.S.C. § 1; 18 U.S.C. § 371; Alamo Fence Company of Houston v. United States, 240 F.2d 179, C.A. 5, 1957. In addition, a corporation may be convicted of a crime, including a crime of knowledge and willfulness by the conduct of its agents and employees. Boise Dodge, Inc. v. United States, 406 F.2d 771, C.A. 9, 1969.

The defendant in this case also argues (Defendant's brief, page 3) that only an individual can be present at the time of the discharge of oil. There can be no argument with this, but the word "individual" is included in the definition of "person" in § 1321(a)(7) as is the term "corporation". To give credence to the argument of the defendant that corpora-

tions cannot be present at the time of the discharge of oil would be as unreasonable as to say that a corporation could not hire individuals, manufacture and sell products, engage in business generally, buy, own and sell real estate or issue bonds and indebtedness obligations. Certainly the corporation is there upon the discharge of oil when any of its duly authorized employees function in its behalf, within the scope of their employment and perform the duties of the corporation in the only manner in which it is possible for the corporation to act and for which it must bear responsibility.

■■ Concerning the defendant's argument (Defendant's brief, page 8) relating to the ambiguity of the statute, the fundamental rule of statutory construction provides that where an Act of Congress is charged with any ambiguity, it is to be construed to effect its purposes if at all possible. Elizabeth Arden, Inc., et al. v. Federal Trade Commission, 156 F.2d 132, C.A. 2, 1947, cert. den. 331 U.S. 806 (1947); United States et al. v. Pennsylvania Railroad Company et al., 55 F.Supp. 473 (D.C.N.J., 1943), aff'd. 323 U.S. 612, 65 S.Ct. 471, 89 L.Ed. 499; In Re McMillan, Rapp & Co., 38 F.Supp. 40 (D.C.Pa.1941), aff'd. 123 F.2d 428, C.A. 3, 1941. And where an Act is sufficiently explanatory and provides definition for its meaning and objectives, it is not to be found to be ambiguous because of any unreasonable projected interpretation. Girardi v. Lipsett, Inc., 275 F.2d 492, C.A. 3, 1960, cert. den. 364, 821, 81 S.Ct. 56, 5 L.Ed.2d 50 (1960); Baur v. Commissioner of Internal Revenue, 145 F.2d 338, C.A. 3, 1944.

■ Congress has gone to considerable length to define the reason for the enactment of the Water Pollution Control Act, and its objectives and has provided definition of the terms which it uses in order to clarify its purpose. The statute is unambiguous in its phraseology and requires obedience to its prohibited proscriptions. An Act of Congress such as this should not be set aside by non-existent contextual association.

As I have already indicated, Congress did define in unmistakable language the meaning of the word "person", and however the word "person" is placed within the statute it takes on the meaning and significance as defined in subsection (a)(7). Thus there is no function for this court to take over.

■ The defendant also infers (Defendant's brief, page 5) that because one case, United States v. Skil Corporation, 351 F.Supp. 295 (D.C.Ill., 1972) interpreted the phrase "person in charge" to mean an individual, and others have not, the statute is therefore ambiguous. This contention differs from majority thinking. In United States v. Republic Steel, 491 F.2d 315 (1974), the Sixth Circuit Court of Appeals in an action brought under § 1161(b)(4), the forerunner to § 1321(b)(5), affirmed the district court's grant of the defendant's motions to suppress evidence and for dismissal of the information upon the government's admission that the defendant corporation's notice, and the information learned in investigation and exploitation of the notice, was the sole basis for the criminal charge. The court approved the earlier Fifth Circuit decision in United States v. Mobil Oil Corporation, 464 F.2d 1124 (1972), holding that the defendant corporation was entitled to the statutory immunity when its employee had notified the Coast Guard of a discharge of oil. In *Mobil Oil, supra,* the court stated at page 1127:

"The owner-operator of a vessel or a vacility [sic] has the capacity to make timely discovery of oil discharges. The owner-operator has power to direct the activities of persons who control the mechanisms causing the pollution. The owner-operator has the capacity to prevent and abate damage. Accordingly, the owner-operator of a facility governed by the WPCA, such as the Mobil facility here, must be re-

**1116**

garded as a 'person in charge' of the facility for the purposes of § 1161. A more restrictive interpretation would frustrate congressional purpose by exempting from the operation of the Act a large class of persons who are uniquely qualified to assume the burden imposed by it.

We conclude that an owner-operator is 'in charge' of his facility within the meaning of § 1161. It necessarily follows that a corporate owner, a 'person' within the statutory definition, is a 'person in charge' of the facilities it owns and operates and is thus entitled to the statutory immunity."

Two cases in the Third Circuit held that the language "person in charge" applies to a corporation. United States of America v. United States Steel Corporation, Criminal No. 72–2, Western District of Pennsylvania, and United States v. General American Transportation Corporation, 367 F.Supp. 1284 (D.C.N. J., 1973).

The mere fact that one judge disagreed with a majority of judges makes the defendant's argument that the statute is ambiguous highly unacceptable. There is nothing more emphasized in law than differences of opinion amongst judges and justices of the federal system. That is the function and privilege of those engaged in this most serious public responsibility to consider and even rationalize the differences between men's thinking and to settle upon a determination by which law and order might prevail. Reliance is ordinarily had upon majority determinations. I am in agreement with the majority thinking of the courts on the interpretation of the term "person", as relates to the pertinent subject matter, and furthermore, I perceive no ambiguity here as charged by the defendant.

For all of these reasons the motion of the defendant to dismiss the information will be denied.